330 So.2d 265 (1976)
Glen Miller LOPER
v.
STATE of Mississippi.
No. 48767.
Supreme Court of Mississippi.
April 13, 1976.
*266 Lawyer & Hudson, Gulfport, for appellant.
A.F. Summer, Atty. Gen., by Catherine Walker, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SMITH and BROOM, JJ.
BROOM, Justice:
This forcible rape case against Loper (appellant) was tried in the Circuit Court of Pearl River County. Appellant was convicted and he appeals from a sentence of sixty years' imprisonment. We affirm.
Issues raised relate to: admissibility of evidence obtained without a search warrant, denial of a change of venue, admissibility of appellant's confession and results of testing his blood, and sufficiency of the evidence.
During the morning of October 10, 1974, a fifty-two year old woman was raped by a man she identified as the appellant. He came to her home and asked to see her husband. Upon learning that the husband was not at home, appellant grabbed the woman, dragged her into the house, and held her around the neck for what to her "seemed like an eternity." He raped her after threatening to take her life. As he left the house, appellant took with him the victim's pistol which he had discovered on her chest of drawers. After the occurrence, the victim drove to the nearby house of Deputy Sheriff Bester, whose wife called the sheriff. While hospitalized (the next several days), the victim identified appellant by means of a photograph shown her. She also made an in-court identification of him based upon her observation during commission of the offense.

I.
Appellant argues that the trial court erred in admitting into evidence a pistol found in the back yard of the residence owned by appellant's parents where he lived with them and other members of the family. Also in question is the admission into evidence of photographs taken in the back yard, depicting the pistol hidden in a stack of concrete blocks and a pile of ashes and partially burned clothing. Testimony brought out at the hearing of appellant's motion to suppress evidence shows that the law officers, in conducting their investigation shortly after the offense occurred, went to the residence of appellant's family and asked if appellant were there. After being told he was not there, the officers walked back to their car and then were called back to the house by one of the occupants who spoke from inside it. It is not clear who called the officers back, but appellant's brother, Edward Earl Loper, testified that either he or his mother called the officers. His mother stated that she did not know if he called the officers, but she did state that she saw them follow her son into the back yard. In the back yard the pistol and ashes were pointed out to the officers by Edward Earl who, along with appellant and others, was a joint occupant of the dwelling.
In this case the officers had no warrant when they (in appellant's absence) went upon the property, procured the pistol, and took photographs which were admitted into evidence over appellant's objection. The general rule is that a warrantless search by law enforcement officers is per se unreasonable. There are exceptions to the rule, and one of the recognized exceptions is a consensual search. Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946); Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946). At issue is whether or not this case falls within that exception. Significant is the fact that the officers were invited onto the property by appellant's *267 mother or brother who, like the appellant, shared the residence with his parents and other family members.
United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), holds that:
[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, non-consenting person with whom that authority is shared. (415 U.S. at 170, 94 S.Ct. at 993, 39 L.Ed.2d at 249).
[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it ... may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. (415 U.S. at 172, 94 S.Ct. at 993, 39 L.Ed.2d at 249-50).
The appellant contends that his brother had no authority in the presence of their mother, who with her husband was joint owner of the property, to consent to the search; i.e., only she could grant permission. To so hold would have the incongruous effect of granting one brother standing to object on the basis of his relationship to the premises, while denying the other the authority to consent based on an identical relationship. Such a paradox would be devoid of logic. There is no allegation that the hiding place of the pistol was in any manner the exclusive personal domain of the appellant. The pistol was found in the back yard of the residence which, according to the evidence, was available for the common use of every occupant, including appellant and his brother, Edward Earl. As pointed out in Matlock, supra, common authority is not based upon the mere property interest of a third person, but upon mutual use of the property by persons generally having joint access or control for most purposes.
The evidence gained in the back yard of the premises was revealed to the law officers in this case by affirmative action of appellant's brother absent any suggestion of any threats or coercion being brought to bear upon any person present. None of the officers' actions were violative of the guarantees of the Fourth or Fourteenth Amendments to the United States Constitution, or section 23 of the Mississippi Constitution of 1890 against "unreasonable searches and seizures." The trial judge, upon the evidence before him, in effect ruled that the search and seizure were not unreasonable, and we cannot say that he was manifestly wrong. This is not in conflict with Henry v. State, 253 Miss. 263, 154 So.2d 289 (1963), which held that a wife, who owned no interest in her defendant husband's car parked in his driveway, could not on his behalf consent to a search of the car.
Our holding here is an application of the rule set forth in Haralson v. State, 318 So.2d 891 (Miss. 1975), that a joint occupant (Haralson's son) "had a right to retrieve the shotgun for the sheriff." Thus under Matlock, supra, and Haralson, supra, the pistol and photographs were properly admitted into evidence.

II.
Another contention of the appellant is that the trial court erred in overruling his motion for a change of venue. In his brief appellant points out that appellant was removed from the Pearl River County jail to the Forrest County jail, and cites Seals v. State, 208 Miss. 236, 44 So.2d 61 (1950), and McGee v. State, 200 Miss. 350, 26 So.2d 680 (1946). Those cases do not hold that the removal alone would raise any irrebuttable presumption in favor of the appellant. Here the appellant's application for change of venue was contested by the state, and a large number of witnesses testified that the case could be fairly tried in Pearl River County. Upon conflicting evidence, we cannot say that the trial judge abused his discretion in proceeding to trial in the county where the offense *268 occurred. Saucier v. State, Cause No. 48,924 decided March 9, 1976, and not yet reported.

III.
Appellant also raises an issue related to the question of his mental competency and the voluntary character of a confession placed in evidence over his objection. Additionally, he contends that the court erroneously admitted into evidence results of a blood test and body examination of the appellant. The trial judge heard evidence that the appellant was beaten and threatened before he confessed and signed a waiver to the blood test made of his blood. All of the officers present testified and denied all of the allegations of threats, beatings or coercion. On October 12, 1974, Dr. Walrod, with appellant's consent, examined his body, took a blood sample, and made a blood test. Revealed by the examination was a small laceration on appellant's penis, but no evidence that he had been bruised or abused. As to the appellant's mental capacity to appreciate the nature of the confession and to understand the consequences of the waiver that he signed, the trial judge was in the best position to consider appellant's testimony and to observe his demeanor. His conclusions based upon his own observation and hearing of the witnesses are not manifestly erroneous, but supported by the record.

IV.
We find no merit in the appellant's argument that the state failed to prove the essential elements of the crime and that the victim's testimony was so inconsistent as to be against the clear weight of the evidence. Though she weighed nearly two hundred pounds, she was not physically strong and was in great fear for her life. The record shows that on the date of the offense Dr. W.F. Stringer, M.D., examined the victim and found her emotionally upset. He described numerous abrasions to her genital area and stated that he found evidence of her "having had sexual intercourse or some other means or trauma to her genital area." Dr. Stringer also stated that he observed "tenderness in her abdomen," and blood on her thighs, abdomen and clothing. His finding of the blood was compatible with the victim's testimony that after the offense her assailant was bleeding and went to the bathroom to wash. Blood tests revealed that appellant's blood type matched that left by the perpetrator of the crime in the bedroom where the offense occurred. Upon conflicing evidence the jury accepted the state's case, and no reversible error is found in the record.
AFFIRMED.
GILLESPIE, C.J., PATTERSON, and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and LEE, JJ., concur.